IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sandra Rouse, ) | C/A No. 0:13-1904-JFA-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, ) | |
| Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Sandra Rouse ("Rouse"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In January 2010, Rouse applied for DIB and SSI, alleging disability beginning October 30, 2009. Rouse's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 16, 2012, at which Rouse, who was represent by Melissa L. Franklin, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on April 3, 2012 denying benefits and concluding that Rouse was not disabled. (Tr. 12-24.)

Page 1 of 17

PJG

Rouse was born in 1974 and was thirty-five years old at the time of her alleged disability onset date. (Tr. 101.) She has a limited education and past relevant work experience as a manager and cashier at a gas station. (Tr. 155, 156.) Rouse alleged disability due to diabetes; bad eye sight; bad nerves in the hands, arms, legs, and feet; and a bad heart. (Tr. 154.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Diabetes Mellitus; Depression; and, Coronary artery disease, status-post infarction (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except: must avoid extreme heat and cold, hazardous equipment, and unprotected heights. The claimant can do simple work, which requires simple, routine, repetitive tasks, and only occasional exposure to the public.

    \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born . . . [in] 1974 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has



      transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

                          \*    \*    \*

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-24.) The Appeals Council denied Rouse's request for review on May 22, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

*PJG*

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Rouse raises the following issues for this judicial review:

I.  The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

II. The ALJ provided no meaningful assessment of the Plaintiff's credibility.

III. The ALJ failed to properly assess opinion evidence.

(Pl.'s Br., ECF No. 23.)

## DISCUSSION

**A.      Residual Functional Capacity**

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC. See SSR 96-8p, 1996 WL 374184. The RFC

assessment must be based on all of the relevant evidence in the record.² Id. The ALJ must address both the individual's exertional and nonexertional capacities. Id., at *5-6. Further, the assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusion. Id., at *7.

Rouse argues that the ALJ erred in failing to consider selective evidence about her impairments and in failing to consider her impairments in combination in determining Rouse's residual functional capacity. Specifically, Rouse argues that the ALJ erred in (1) failing to discuss evidence showing advanced small fiber neuropathy with severely decreased nerve fiber density and evidence of results from a vein mapping showing significant venous insufficiency bilaterally in the lower extremities, indicating that the ALJ failed to properly consider her neuropathy (see Tr. 770, 841); (2) failing to discuss evidence that Rouse underwent laser photocoagulation on December 2 and December 9, 2010; that her eyes were painful, burning, irritated, and sensitive to light; and evidence of numerous laser procedures, indicating that the ALJ failed to properly consider her alleged visual restrictions (see Tr. 538, 655, 698-699, 819, 903); and (3) failing to consider additional limitations from Rouse's learning disability that would contribute to her depression and further hamper her ability to do even simple work and failing to discuss her school records (Tr. 34, 221-34). As stated above, the ALJ found that Rouse retained the RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except: must avoid extreme heat and cold,

---

² This evidence includes: medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184, at *5.



hazardous equipment, and unprotected heights. The claimant can do simple work, which requires simple, routine, repetitive tasks, and only occasional exposure to the public." (Tr. 16-17.)

In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. (Tr. 17-22.) The ALJ's discussion explained his resolution of inconsistencies or ambiguities in the evidence in the case record, such as his evaluation of Rouse's subjective complaints as well as the opinion evidence. (Id.) Upon careful review of the ALJ's decision and the record in this matter, the court finds that Rouse cannot demonstrate that the ALJ's RFC analysis is unsupported by substantial evidence or controlled by an error of law. Rouse cites to selective evidence that she believes warrants additional functional limitations. However, contrary to her arguments, it is clear from the ALJ's decision that he thoroughly considered and discussed Rouse's impairments and their resulting limitations, individually and in combination.[3] As part of his evaluation of the evidence, with regard to Rouse's neuropathy, the ALJ expressly considered and discussed (1) Dr. Michael H. Rivner's May 2010 examination, which included an opinion that Rouse was limited by poorly controlled neuropathy that was most likely secondary to her diabetes and observations that Rouse had an antalgic gait, difficulty trying to get on her heels, decreased sensation about the knees, decreased vibratory in both feet, trace or absent reflexes in the ankles, full leg strength except for 4+/5 strength in the knees (Tr. 19, 564-566); (2) Dr. Kate Mayes's repeated diagnoses of Rouse with neuropathy in examinations conducted between July 2010 and September 2011 (Tr. 19, 703-736, 770-823); and (3) notes from Dr. Tarn that Rouse had a history of complaints about chronic leg pain and that she walked with a cane (Tr. 21,

---

[3] To the extent that Rouse's arguments in this section can be construed to argue that the ALJ erred in evaluating her credibility, such an argument similarly fails and is discussed in more detail below.



853-58). As a result of Rouse's neuropathy as well as other symptoms, the ALJ specifically found that Rouse's condition "reduces her residual functional capacity to where she cannot work at greater than the sedentary level of exertion." (Tr. 21.) The ALJ also found that Rouse must "avoid extreme heat and cold, hazardous equipment; and unprotected heights," finding these limitations consistent with limitations caused by her diabetes and diabetes related neuropathy. (Tr. 22.) However, he found the evidence did not support a conclusion that Rouse could not walk short distances or sit for six hours in an eight-hour day. Similarly, the ALJ observed that Rouse's diabetes affected her eyes and expressly discussed the following evidence with regard to Rouse's allegations of visual limitations: (1) Dr. Daniel Smith's May 2010 diagnoses that Rouse suffered from background diabetic retinopathy, proliferative diabetic retinopathy, senile cataracts, and nuclear sclerosis, and Dr. Smith's conclusion that treatment was not needed at the time (Tr. 19, 540); (2) Rouse's reports to Dr. Smith in October 2011 of pain in her eyes and a loss of vision in her left eye (Tr. 19, 903); and (3) assessments in November 2010 by a consultative examiner of non-central clinically significant macular edema, proliferative diabetic retinopathy, and mild cataract, as well as the examiner's finding that her visual acuity was 20/25 and 20/20 (Tr. 19, 694). Finally, with regard to Rouse's mental impairment, the ALJ discussed evidence revealing that (1) Rouse testified that she had earned a certificate degree in special education (Tr. 17); (2) in February 2012 Rouse was diagnosed with a learning disorder and continued to describe auditory hallucination to her mental health provider at that time (Tr. 20, 980); (3) Dr. Mayes treated Rouse eighteen times from July 2010 though September 2011 and concluded that Rouse had no work-related limitations due to her mental condition, but that conclusions from Dr. Mayes "were consistent with the conclusion that the claimant's depression was limiting," including evidence of Rouse's mood and flat affect and only adequate concentration, attention, and memory (Tr. 20, 703-36); and (4) Rouse was treated at least

eight times at Aiken Barnwell Mental Health between January 2011 and February 2012, which revealed diagnoses of major depression with psychotic features and a learning disorder, as well as a conclusion in April 2011 that Rouse exhibited limited compliance with her depression treatment at times (Tr. 20).  The ALJ specifically found that Rouse's depression reduced her RFC such that "she can only do simple routine work, which requires simple, routine, repetitive tasks" and "can only occasional[ly] interact with the general public."  (Tr. 22.)  In reaching this finding, the ALJ also observed that Rouse's

> mood and affect was flat; she displayed only adequate attention, concentration, and memory; she was having physical problems due to diabetes, cardiac problems, and diabetic-related problems; her sleep, energy, and sex drive were poor; she felt worthless; experienced crying spells; and, sometimes heard voices that told her to kill herself (Exhibits 20F, 22F, & 23F).  However, the medical evidence is consistent with the conclusion that she retains some ability to work, as her treating physician noted that she was oriented to time, person, place, and situation, had an intact thought process, and exhibited appropriate thought content (Exhibits 20F & 23F).

(Id.)

Accordingly, based on all of the foregoing, Rouse has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 96-8p.  Furthermore, contrary to Rouse's assertion, she has failed to demonstrate that the ALJ failed to consider her impairments in combination as the decision as a whole clearly belies this argument, revealing repeated references to her various impairments and references to her impairments in combination.  The court finds that Rouse's reliance on selective records and belief that additional limitations are warranted are insufficient to warrant remand.  See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the court to conclude that the ALJ considered the claimant's medical condition as a whole) (citation omitted).



B.   **Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case the ALJ observed that at the hearing, Rouse testified that

> she graduated from high school, and she earned her certificate degree in special education.[5] The claimant also had a good work record, as she worked from 1996 to 2009. The claimant also worked as a manager for a store for ten years at Golden Pantry and five years for Global Oil. During this job, the claimant was responsible for handling money, and she would have to lift up to 50 pounds. She testified that she lost her job, because she became sick when she was working and started to lose concentration on her job. She stated that she could not go back to her job, as her bowel disorder would not permit her to do her duties. She testified that she had been diagnosed with diabetes since 1994, started insulin in 1997, and that her blood sugar levels were currently controlled. The claimant testified that she was also limited by dizzy spells because of her anemic condition and balance problems that are caused by her anemia. She stated that she stabbed herself with a knife, and could not lift more than 4 or five pounds. She also mentioned that she could sit for only 30-40 minutes before her legs became numb or stand and walk for only two minutes while she used a cane. She testified that she started using a cane after she fell and hurt her kneecap on multiple occasions and was later prescribed a cane by Dr. Snitch. The claimant explained that she went to a mental health clinic, because she had thoughts of hurting herself, tried to hurt herself a few times, and had marital problems at the time. The claimant stated that every day she experienced crying episodes every day [*sic*], did not sleep often, became depressed, and heard voices that told her to hurt herself. She also explained that she was limited by anxiety attacks and would frequently want to return home because of them. The claimant also stated that she

---

[5] Although awkwardly worded, the parties agree and the testimony clearly reflects that Rouse stated that she went to school through twelfth grade. However, she did not receive a diploma; she received a certificate. Rouse also indicated that she was in special education classes. (Tr. 34.)



most frequently interacted with her mother and her one best friend who visited her once a month.  She mentioned that she lived with her daughter.  She also stated that she did not do house chores, because she ran out of breath when attempting to do them.  She mentioned that she tried to help her daughter with her daughter's online classes, so that her daughter could graduate early.

(Tr. 17-18.)  The ALJ found that Rouse's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the [her] residual functional capacity assessment."  (Tr. 21.)

Rouse argues that following this general conclusion, "the ALJ merely restates objective medical evidence that supports her diagnoses, and provides no reason beyond the diagnoses for not finding her credible."  (Pl.'s Br. at 23, ECF No. 23 at 23.)  Essentially, Rouse appears to argue that the ALJ erred by discounting her credibility solely based on objective medical evidence.[6]  Upon review of the ALJ's decision as a whole, the court disagrees.  In addition to discussing the medical evidence in detail, the ALJ found that Rouse can walk for at least short durations in part because contrary to Rouse's testimony, the record does not reflect that Rouse was ever prescribed a cane.  Additionally, the ALJ limited Rouse to only occasional  interaction with the general public in part based on her testimony that her interactions are limited to her mother, daughter, and one best friend.  (Tr. 22.)

Importantly, it the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion comfortably within the bounds of substantial evidence.  See Craig, 76 F.3d at 589 (stating that the

---

[6] Alternatively, Rouse argues that the ALJ ignored substantial objective findings that support Rouse's credibility, "such as the objective testing demonstrating advanced neuropathy and the findings of a vein mapping performed by Dr. Arthur, showing significant venous insufficiency bilaterally in the lower extremities."  (Pl.'s Br. at 24, ECF No. 23 at 24.)  However, for the reasons discussed above, the court similarly finds that Rouse's reliance on selective medical evidence that she contends supports her testimony is insufficient to demonstrate that the ALJ's decision is unsupported by substantial evidence in light of the ALJ's decision as a whole.



court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the court finds that the ALJ's decision sufficiently demonstrates that he considered the relevant factors in weighing Rouse's credibility, including Rouse's daily activities. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Even if Rouse's subjective complaints "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, the ALJ properly considered the objective medical evidence and other objective evidence in evaluating Rouse's complaints and the extent to which it impairs her ability to work. See Craig, 76 F.3d at 595.

Therefore, the court finds that Rouse has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

C.     Opinion Evidence

Rouse argues that the ALJ erred in failing to carefully consider and explain the weight assigned to the state agency physicians' and psychological consultant's opinions. Further, Rouse



argues that although the ALJ indicated that Dr. Mayes provided an opinion that Rouse was disabled since October 5, 2009 according to the U.S. Department of Housing and Urban Development (HUD) definition, the ALJ only noted that Dr. Mayes did not explain how the claimant's condition made her disabled under the HUD definition and failed to include any discussion of the weight assigned to that opinion. Therefore, Rouse contends that in light of these errors, it is impossible to review the ALJ's decision.

Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id. Further, an ALJ generally considers the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, the whether the source is a specialist, and any other factors that may support or contradict the opinion. Id.

Even accepting Rouse's arguments that the ALJ erred in failing to explicitly state the weight given to the state agency reviewers, the court finds that Rouse has failed to demonstrate that the ALJ's decision to give these opinions little weight unsupported by substantial evidence.

As pointed out by the Commissioner, Dr. Mayes's opinion does not contain any statements regarding Rouse's limitations or abilities and therefore was not entitled to any special significance. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical

or mental restrictions"); 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that opinions that a claimant is disabled or unable to work are not a medical opinion and are opinions on issues reserved to the Commissioner); Thompson v. Astrue, No. 10-2277, 2011 WL 3489671, at *4 (4th Cir. Aug. 10, 2011) (stating that a conclusory opinion that the claimant was "permanently and totally disabled" and "will never be able to perform substantial gainful work activity" "more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion" and "[s]uch opinions are not afforded any special significance").

With regard to the state agency examiners, the parties agree that the ALJ discussed each opinion but did not point out what weight he assigned those opinions. Specifically, the ALJ stated that on June 17, 2010, a state agency reviewer opined that Rouse was capable of work at the medium exertional level.[7] (Tr. 18.) The ALJ also stated that on November 2, 2010, a state agency reviewer opined that Rouse was capable of work at the light exertional level, with several postural limitations, and a limitation regarding exposure to hazards, extreme cold, and extreme heat. (Tr. 18, 644-51.) The Commissioner argues that although the ALJ did not assign a specific weight to these opinions, it is clear from the opinion and the RFC assessment that he afforded them some weight. The ALJ included the limitation regarding Rouse's exposure to hazards, extreme cold, and extreme heat; however, the ALJ found that based on the record before him, Rouse was more limited than the agency reviewers found by limiting her to sedentary work. Therefore, the court finds that to the

---

[7] The ALJ also indicated that this reviewer's opinion included several postural limitations and environmental limitations. The Commissioner concedes that the inclusion of these limitations by the ALJ was a mistaken as it opined that Rouse could perform the full range of medium work. (See Tr. 18, 572-79.) However, the court agrees with the Commissioner that as the ALJ found that Rouse was even more limited than either of the state agency reviewers' actual opinions or his summary of the opinions, this error is harmless.



extent that the ALJ erred in failing to specifically stated the weight provided to these opinions, Rouse has failed to indicate any harm from this error.

Therefore, Rouse has failed to demonstrate that remand is warranted on these issues, and she has not demonstrated that the ALJ's opinion is unsupported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Rouse has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 3, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).